■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL H. DUKES, Appellant. [717 NYS2d 720] — Crew III, J. P. Appeal from a judgment of the County Court of Albany County (Rosen, J.), rendered January 5, 1999, upon a verdict convicting defendant of the crimes of murder in the second degree, burglary in the first degree, robbery in the first degree and robbery in the second degree.

On October 4, 1996, defendant and others went to the apartment of Erik Mitchell at 195 Clinton Avenue in the City of Albany, bound the persons present at the apartment at that time and stole some personal property. Thereafter, on February 18, 1997, defendant and others returned to that apartment, at which time Mitchell was shot and killed. As a consequence, a Grand Jury indicted defendant and charged him with one count of murder in the first degree, two counts of murder in the second degree, one count of burglary in the first degree, one count of robbery in the first degree and one count of robbery in the second degree. Following a jury trial, defendant was convicted of one count of murder in the second degree, burglary in the first degree, robbery in the first degree and robbery in the second degree, for which he was sentenced to, *inter alia*, an indeterminate term of imprisonment of 25 years to life. Defendant now appeals.

Initially, defendant claims that County Court erred in permitting the People to impeach one of their witnesses pursuant to CPL 60.35. We agree. The record reflects that the People called one Matt Parsons to the stand and questioned him about his knowledge of and involvement in the burglary/robbery of the Mitchell apartment, acquaintanceship with defendant and conversation with defendant concerning the Mitchell homicide. Following Parsons' testimony concerning the initial burglary/robbery, the prosecutor asked, "[C]an you tell the jury here whether or not you had a conversation with [defendant] * * * at some point in time after [Mitchell] was killed, but before you got indicted on the robbery?" The following colloquy took place:

"Answer: I don't know.

"Question: You don't know, or you don't remember, or it didn't happen?

"Answer: I don't remember."

Immediately following the latter response, the prosecutor, over the objection of defense counsel, read Parson's Grand Jury testimony, wherein he related that he had indeed had a

conversation with defendant, at which time, among other things, defendant told Parsons that he shot Mitchell.

It is axiomatic that a party to a criminal proceeding may impeach his or her own witness if, on direct examination, the witness tends to disprove a material issue of the case or affirmatively damages the party's case (see, CPL 60.35 [1]; *People v Fitzpatrick*, 40 NY2d 44, 48-49). However, it is equally clear that such testimony must consist of something more than an inability to recall the events in question, as such claimed non-recollection neither tends to disprove the position of the prosecution nor affirmatively damages its case (see, e.g., *People v Fitzpatrick, supra*; *People v Hickman*, 148 AD2d 937, *affd on mem below* 75 NY2d 891). Had the People made reference in their opening to a conversation between defendant and Parsons and the specific content thereof, a subsequent statement by Parsons that such conversation never took place arguably could be viewed as tending to disprove a material issue in the People's case. That, however, is not what occurred here. Parsons did not deny that the subject conversation took place; he simply stated that he did not remember. Such testimony did not damage the People's case and, accordingly, County Court erred in permitting impeachment of Parsons by use of his prior Grand Jury testimony.

Contrary to defendant's contention, however, we perceive the use of the impeachment testimony to have been harmless error (see, *People v Fuller*, 50 NY2d 628, 638). The record makes plain that defendant made any number of admissions to law enforcement officials, as well as lay persons, demonstrating that he had killed a person, and the evidence was such that it clearly was inferable that the person killed was Mitchell.*

With respect to such admissions, defendant asserts that certain statements made to the police after consultation with counsel assigned to him on an unrelated matter were improperly received by County Court. We disagree. It is clear from the record that defendant made such statements following waiver of his right to counsel in the presence of his assigned attorney (see, *People v Burdo*, 91 NY2d 146, 150). To the extent that defendant asserts that he was denied his right to effective assistance of counsel, we note only that counsel's assent to defendant's interview with the police was predicated upon defendant's lack of candor with his attorney with respect to the

---

* In one instance, defendant revealed that he had killed a State University of New York student who lived in the Arbor Hill section of Albany by shooting him in the head. Mitchell, a State University of New York student, was shot in the head in his apartment in Arbor Hill.

subject matter of the police inquiry (*see, People v Beam*, 57 NY2d 241, 249). We have considered defendant's remaining arguments and find them equally without merit.

Peters, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.