■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EMAR ABRAMS, Appellant. [900 NYS2d 489]—

Rose, J. Appeal from a judgment of the Supreme Court (Mc-

Donough, J.), rendered April 7, 2008 in Ulster County, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree (two counts), reckless endangerment in the first degree and endangering the welfare of a child (two counts).

Following an altercation between defendant and his wife (hereinafter the victim) in her apartment, she sat down at her computer. Shortly thereafter, a shot was fired from behind her that shattered the computer monitor. The police investigation revealed that defendant had been in the apartment at the time, but immediately left and took a taxi to his paramour's home. From the paramour, police learned that defendant had placed a handgun in a lockbox at her home and that, at his request, she had removed the lockbox. The police ultimately retrieved the lockbox with the handgun in it, and determined that a spent bullet casing found in the victim's apartment came from that gun. At a trial of the resulting charges, the People were represented by a Special Prosecutor and the jury ultimately convicted defendant of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree (two counts), reckless endangerment in the first degree and endangering the welfare of a child (two counts). A few days later, defendant moved pursuant to CPL 330.30 to set the verdict aside based upon new evidence that someone else had fired the shot in the victim's apartment. Supreme Court denied the motion and then sentenced defendant to concurrent terms of imprisonment, the longest of which is a term of 13¹/₂ years. Defendant now appeals.

Defendant initially argues that since the Ulster County District Attorney was disqualified due to his prior representation of defendant, the Special Prosecutor's consultation with the District Attorney regarding the granting of immunity to obtain a witness's testimony was improper and deprived him of his right to counsel. We are not persuaded. During the trial, the Special Prosecutor informed Supreme Court that he had asked the District Attorney whether he had authority to grant immunity to the victim and "was given permission to do that." Inasmuch as the powers possessed by a special prosecutor under *County Law* § 701 (4) include the discretionary authority to ask the court to confer immunity (*see* CPL 50.20 [2]; 50.30; *People v Benedict*, 115 AD2d 795, 796 [1985], *affd* 68 NY2d 832 [1986], *cert denied* 480 US 937 [1987]), the District Attorney's statement here did not confer any authority which the Special Prosecutor did not otherwise have. Nor is there anything in the

record suggesting that the District Attorney's conversation with the Special Prosecutor was influenced by or revealed any confidential information derived from the earlier attorney-client relationship. Under these circumstances, it cannot be said that "the claimed conflict of interest [had] a direct affect on the representation" (*People v Abar*, 290 AD2d 592, 593 [2002], *affd* 99 NY2d 406 [2003]; *see People v Bates*, 299 AD2d 727, 730 [2002], *lv denied* 99 NY2d 626 [2003]).

Defendant also contends that Supreme Court improperly permitted the Special Prosecutor to impeach the victim. While we agree, we find that the error was harmless. The People may impeach their own witness on direct examination "only if that witness gives testimony upon a material issue or fact which 'tends *to disprove* the party's position or *affirmatively damages* the party's case' " (*People v Andujar*, 290 AD2d 654, 656 [2002], *lv denied* 98 NY2d 648 [2002], quoting *People v Saez*, 69 NY2d 802, 804 [1987]; *see* CPL 60.35 [1]). Here, the victim testified that she did not know where defendant was in the apartment before the shot was fired and could not recall if she told anyone who shot her monitor. Over objection, the prosecutor then read the victim's grand jury testimony in which she stated that defendant had been standing just behind her and that he shot the monitor. While the victim's trial testimony differed from her prior testimony, she did not dispute the prosecution's claim that defendant fired the shot; she merely declined to state that he had been in the room and could not recall whether she had said he fired the shot. Inasmuch as her noncommittal trial testimony "did not contradict or disprove any . . . *factual* evidence presented by the prosecution," it was error to admit the prior testimony (*People v Fitzpatrick*, 40 NY2d 44, 52 [1976]; *see People v Mitchell*, 57 AD3d 1308, 1310 [2008]; *People v Bellamy*, 26 AD3d 638, 640 [2006]; *People v Dukes*, 278 AD2d 589, 590 [2000], *lv denied* 96 NY2d 799 [2001]). However, as Supreme Court gave a prompt limiting instruction, the prosecutor made no further reference to the grand jury testimony and there was other overwhelming evidence of defendant's guilt, we find the error to be harmless (*see People v Hilliard*, 49 AD3d 910, 913 [2008], *lv denied* 10 NY3d 959 [2008]; *People v Dukes*, 278 AD2d at 590).

Defendant further argues that, on cross-examination, the Special Prosecutor improperly elicited testimony from him regarding his gang affiliation because such questioning exceeded the bounds of Supreme Court's *Sandoval* ruling. Inasmuch as defendant did not object on that ground or request a limiting instruction to the jury, this issue is unpreserved (*see People v*

*Lee*, 66 AD3d 1116, 1121 [2009]). Were we to review the argument, we would find it unavailing because the prosecutor asked defendant where he resided. Defendant answered by identifying several places, but he then added that his location always changed because he had been threatened. This unresponsive statement opened the door for the prosecutor to ask who made the threats and then, when defendant said gang members, inquire about his relationship with the gang (*see People v Fardan*, 82 NY2d 638, 646 [1993]; *People v Sanders*, 38 AD3d 941, 942 [2007], *lv denied* 9 NY3d 869 [2007]; *People v Brown*, 252 AD2d 598, 600 [1998], *lv denied* 92 NY2d 923 [1998]).

Next, Supreme Court did not err in preventing defendant from calling a witness who allegedly would have testified that someone else could have fired the shot in the victim's apartment. On the last day of trial, defense counsel informed the court that defendant wished to call a fellow jail inmate even though the inmate had no personal knowledge of the events in the victim's apartment. As an offer of proof, counsel related that, according to defendant, the inmate "could testify that there were certain gang threats made against [defendant] . . . at the time of this incident and . . . there could have been someone from a . . . gang who fired this weapon." Inasmuch as the inmate did not make the alleged threats and would not connect the threats to the shooting, defendant failed to show that the probative nature of the proposed evidence of third-party culpability would outweigh "the countervailing considerations of undue delay and juror confusion" (*People v Morgan*, 24 AD3d 950, 954 [2005], *lv denied* 6 NY3d 815 [2006]; *see People v Rivera*, 70 AD3d 1177, 1181-1182 [2010]; *People v Oxley*, 64 AD3d 1078, 1081 [2009], *lv denied* 13 NY3d 941 [2010]).

Nor did Supreme Court err in summarily denying defendant's CPL 330.30 motion based upon a handwritten statement, dated after the trial, of the same jail inmate whom he had attempted to call as a witness at trial. In his statement, as opposed to the earlier proffer, the inmate confessed to firing the shot in the victim's apartment. Although the statement bore a notary's stamp and signature, there was no jurat or other indicator that the inmate had been sworn before signing it. In the absence of a sworn allegation, the motion was properly denied without a hearing (*see* CPL 330.40 [2] [e] [ii]; *People v Comfort*, 30 AD3d 1069, 1069 [2006], *lv denied* 7 NY3d 787 [2006]). Moreover, there is nothing in the record showing that defendant made any effort during trial to obtain this new evidence and, thus, he did not meet his burden to demonstrate that it could not have been produced at the trial with due diligence (*see* CPL 330.30 [3];

*People v Watkins*, 49 AD3d 908, 910 [2008], *lv denied* 10 NY3d 965 [2008]; *People v Waller*, 4 AD3d 440, 441 [2004], *lv denied* 2 NY3d 747 [2004]; *People v Williams*, 305 AD2d 802, 803 [2003], *lv denied* 100 NY2d 589 [2003]). As for defendant's own affidavit relating what the inmate said, it is both hearsay and self-serving (*see People v Hampton*, 64 AD3d 872, 876 [2009], *lv denied* 13 NY3d 796 [2009]; *see also People v Stevens*, 64 AD3d 1051, 1053 [2009], *lv denied* 13 NY3d 839 [2009]).

To the extent that defendant's remaining contentions are properly before us, they have been reviewed and are determined to be without merit.

Mercure, J.P., Peters, Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.